UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CUSTOM SHUTTERS, LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>SAIA MOTOR FREIGHT LINE, LLC,<br><br>                      Defendant. | Case No. 12-CV-1070-JPS<br><br>ORDER |

This matter, originally filed by plaintiff Custom Shutters ("CS") in the Wisconsin State court system, was assigned to this court following defendant Saia Motor Freight Line, LLC's ("Saia") removal of the action. (Docket #1). Currently pending before the court is Saia's motion for partial summary judgment. (Docket #21). The motion is fully briefed and ready for adjudication. As explained below, Saia's motion will be denied.

1.     Facts

The undisputed facts of this case are simple. CS is a Wisconsin limited liability company with its office in New Berlin, Wisconsin. Plaintiff's Proposed Finding of Fact ("Pl. PFOF") (Dockets #26, #30) ¶ 1. CS manufactures and sells custom shutters. Am. Compl. (Docket #6) ¶ 5. Saia is a Louisiana limited liability company, with principal offices in Duluth, Georgia. Am. Compl ¶ 6. Saia is an interstate motor carrier. Am. Compl ¶ 1. On August 2, 2012, Tracy Woznicki ("Woznicki"), CS's Vice President and part-owner, called Saia to get a quote for the cost to ship a 5,500 pound package of shutters to a Lowe's store in Naples, Florida; she received a quote of $1,341.00. Pl. PFOF ¶¶ 2-4. On August 9, 2012, Woznicki called Saia, accepted the quote, and scheduled pick-up for that day. Pl. PFOF ¶ 6. The Saia representative instructed Woznicki to make a bill of lading, to put the

quote number on it, and to give it to the driver at the time of pick-up. Pl. PFOF ¶ 7. Woznicki was not given options or choices of limited liability, and the Saia representative made no reference to limited liability on either the August 2nd or the August 9th phone calls. Pl. PFOF ¶ 5, ¶ 8. CS employees found a generic bill of lading on the internet and filled it out; the bill of lading designated the shipment as Class 85 and provided "RECEIVE, subject to the classifications and tariffs in effect on the date of the issue of this shipping order." Pl. PFOF ¶ 9; Defendant's Proposed Finding of Fact ("Def. PFOF") (Dockets #23, #25) ¶ 16. The Saia driver picked up the shipment and put a sticker on the bill of lading before he drove off. Pl. PFOF ¶¶ 11-12. The sticker said, "Driver's signature acknowledges receipt of freight only. Shipment is subject to applicable terms and conditions of the uniform bill of lading, SAIA's tariffs and current NMFC 100. See SAIA 170-D tariff at www.SAIA.com." Def. PFOF ¶ 40. When the shipment arrived in Florida, the shutters had been damaged in transit. Pl. PFOF ¶ 13.

The parties dispute the extent of Saia's liability for the loss. CS made a claim with Saia for Lowe's purchase price: $33,259.20. Pl. PFOF ¶ 13. Saia denied the claim, asserting that its tariff limits liability to $1.00 per pound on any damage caused in transit, and, therefore, it is liable for only $5,500.00. Pl. PFOF ¶ 15. Saia's motion seeks partial summary judgment limiting CS's claim to $5,500.00.

2. Legal Standard

The general standard for assessing motions for summary judgment applies, namely: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

3.   Analysis

The parties agree that the Carmack Amendment, 49 U.S.C. § 14706, governs the resolution of their dispute. Under the Carmack Amendment, a carrier seeking to limit its liability must: "(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to a choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987).[1] CS argues that summary judgment is improper because there are material facts in dispute with regard to prongs two and three of the *Hughes* test.

The court need only analyze the second prong of the *Hughes* test to conclude that Saia is not entitled to summary judgment. Saia contends that it obtained CS's agreement to limited liability because the bill of lading, either standing alone or incorporating the language on the sticker the driver affixed thereto, incorporated Saia's tariff. Brief in Support (Docket #22) at 11. Even accepting Saia's argument that its tariff governs its liability, this raises

---

[1] Subsequent to the *Hughes* opinion, Congress enacted the Trucking Industry Regulatory Reform Act of 1994 and the ICC Termination Act of 1995, rendering the first prong of the *Hughes* test inapplicable. *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012). The modification is irrelevant to this case.

another issue, namely, the determination of which provision of the tariff applies to CS's August 9, 2012, shipment.

Saia contends that the applicable section of the tariff is section 13, entitled "Liability on Volume and/or Spot Price Quotes," which limits Saia's liability to a "maximum liability of $1.00 per pound per package." CS responds that it had no notice that the price quote it received was a "spot price quote," and, therefore, it could not have agreed to limit Saia's liability under this section of the tariff. Response (Docket #24) at 7. Instead, CS directs the court to section 10 of the same tariff, entitled "Limitations of Liability for FAK (Freight of All Kinds) Rates." This section of the tariff provides that shipments of Class 85, as CS specified on the bill of lading for the August 9, 2012, shipment, is covered by one of four methods for calculating liability; CS asserts that under this section, Saia's liability was limited to $15.00 per pound, an amount that exceeds CS's claim.

Saia's argument as to how CS should have known that the price quote was a "spot price quote" is, to be charitable, incredulous. Saia maintains that CS had an account with Saia, and that the account provided for certain pricing and terms.[2] Reply Brief (Docket #29) at 5. Saia further argues that, when Woznicki received the price quote on August 2, 2012, she should have noticed that the quoted price was lower than the price she should have been quoted under the terms of their account, and even further that Woznicki should have inferred from this lower price that she was receiving a "spot price quote" subject to limited liability.

---

[2] Woznicki maintains that CS has no such account with Saia. Woznicki decl. (Docket #27) ¶ 1.

To cut to Hecuba,[3] this argument is barely colorable, and certainly inadequate to prevail on a motion for summary judgment. Saia argues that CS "wants to take no responsibility…for its obligations to investigate SAIA's Tariff." Reply Brief at 5. But, CS could "investigate" the tariff all day[4] without realizing which liability provision applies to its shipment because, by Saia's own admission, that information is not contained in the tariff, and further is not found on the bill of lading, and even further is only possibly discovered by inference based upon historical knowledge of account terms for an account that may or may not exist. On this record, Saia has not proven that it "obtain[ed] the shipper's agreement as to choice of liability." *Hughes*, 829 F.2d at 1415. Saia must prove that such an agreement existed to prevail on its argument that liability is limited as a matter of law. In the absence of such a showing, the court is obliged to deny Saia's motion. Adjudication of this matter will proceed to trial before a jury on Monday, December 16, 2013, in accordance with the court's March 29, 2013 Trial Scheduling Order. (Docket #19).

Accordingly,

---

[3] "Cut to Hecuba…is a 'relic from Shakespeare and was an artifice employed by many old producers to shorten matineés by cutting out long speeches.' … The ref[erence] is to 'What's Hecuba to him or he to Hecuba/That he should weep for her?' in Act II, Scene ii of *Hamlet*." A DICTIONARY OF CATCH PHRASES, AMERICAN AND BRITISH, FROM THE SIXTEENTH CENTURY TO THE PRESENT DAY 59 (1st Trade Paperback Ed. 1992) (*quoting* Michael Warwick, *Theatrical Jargon of the Old Days*, Stage, Oct. 3, 1968)).

[4] A formidable task! The court agrees with the jurists in the District of Oregon who characterized Saia's Tariff as "incomprehensible, internally inconsistent, and incoherent." *Dan Zabel Trading Co., Inc. v. Saia, Inc.*, No. CV-10-805-JE, 2011 WL 5025847, at *2 (D. Or. Oct. 20, 2011).

IT IS ORDERED that Saia's motion for partial summary judgment (Docket #21) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 21st day of November, 2013.

BY THE COURT:

*(signature)*

J.P. Stadtmueller
U.S. District Judge